UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

ROGERS A. NWABUE,

            Plaintiff,

       -v-

NEW YORK STATE DEPT. OF HEALTH/OPMC,
MEDICAL SOCIETY OF THE STATE OF NEW YORK
and SUNY AT BUFFALO/DEPT. OF OBSTETRICS
& GYNECOLOGY,

            Defendants.

**DECISION and ORDER**
10-CV-133S

———————————————————————

## INTRODUCTION

The instant action is one of a series of lawsuits commenced by plaintiff Rogers Nwabue in 2009 and 2010, each of which relate to or stem from his employment as a Resident Physician by the State University of New York at Buffalo School of Medicine, Department of Obstetrics and Gynecology ("SUNY Buffalo"), beginning in August/September, 2008, and his termination from that position in March, 2009. *See Nwabue v. Allaf, et al.,* 09-CV-1092S (Docket No. 3, Sept. 9, 2010) (consolidating six actions filed by plaintiff against physicians or other medical professionals associated with two Buffalo-area hospitals affiliated with the SUNY Buffalo School of Medicine; the actions alleged that the defendants had made false and defamatory statements and reports about plaintiff's performance as a resident physician with SUNY Buffalo); *Nwabue v. SUNY at Buffalo/University Medical Services*, 10-CV-163S (alleging that SUNY Buffalo violated plaintiff's rights under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634

by terminating his employment and taking certain other actions against plaintiff during his employment and in connection with his termination); *Nwabue v. Dillon*, 10-CV-898S (alleging that defendant, a member of the medical faculty of the State University of New York at Buffalo, made statements and taken actions in connection with plaintiff's residency at the medical school which damaged his professional reputation).

Plaintiff's original complaint, filed in February, 2010, named as defendants the New York State Department of Health/OPMC[1] ("DOH/OPMC"), the Medical Society of the State of New York ("Medical Society") and SUNY at Buffalo, Department of Obstetrics & Gynecology ("SUNY/Buffalo"). By Order dated September 20, 2010 (Docket No. 4), this Court (Hon. Richard J. Arcara) dismissed the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted and, in deference to plaintiff's *pro se* status, granted him leave to file an amended complaint alleging a basis for jurisdiction and in accordance with the requirements of Rule 8 of the Federal Rules of Civil Procedure.

Plaintiff thereafter filed an amended complaint (Docket No. 6), which the Court has screened pursuant to 28 U.S.C. § 1915(e)(2)(B).

## **DISCUSSION**

The Court's Order dismissing the original complaint noted that while plaintiff had invoked federal question jurisdiction, 28 U.S.C. § 1331 as the basis for this action, his allegations that the defendants brought or made "fraudulent" charges of psychological or psychiatric problems against him, and referred him for "fraudulent" psychological

---

[1]"OPMC" is the Office of Professional Medical Conduct.

evaluations, and that these actions had caused personal injury and irreparable harm, including damage to his reputation did not suffice to establish the presence of a federal question, nor had plaintiff cited any specific federal statutes or provisions of the Constitution that might apply to his claims. Moreover, to the extent that plaintiff was apparently seeking to have the Court enjoin defendants Medical Society and OPMC from continuing the administrative proceedings to which he objected, the Court noted that his claims were likely barred by *Younger v. Harrris*, 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971), which has been construed to require that the federal courts abstain from assuming jurisdiction over federal constitutional claims which involve ongoing state administrative proceedings. *See* Order dated 7/20/2010 (Docket No. 4) at p. 8 (citing *Diamond "D" Constr Corp. v. McGowan*, 282 F.3d.191, 198 (2d Cir. 2002) and *Sica v. Connecticut*, 331 F. Supp. 2d 82, 84 (D. Conn. 2004)).

<u>Plaintiff's Claims</u>

The amended complaint now invokes 42 U.S.C. §§ 1983 and 1985 as the basis for the three claims asserted therein. The First Claim asserts that representatives of defendant DOH/OPMC conspired with officers of defendant SUNY Buffalo, Department of Obstetrics and Gynecology, to take a series of actions which violated plaintiff's rights and damaged his professional reputation. These included: labeling plaintiff a licensee of the New York State Medical Board in order to "fraudulently" subject him to the jurisdiction of the "State Medical Board/Department of Health"; harassing the Plaintiff through e-mails and telephone calls to appear before the defendants; ordering plaintiff to submit to a "mandatory Psychiatric Examination" by a physician in Kansas designated by the defendant based upon information allegedly indicating that plaintiff was impaired with

3

respect to his ability to practice medicine by reason of a mental disability or psychiatric condition; and publicizing a "permanently damaging adverse report and the request for Psychiatric Evaluation against the Plaintiff, in circulation world-wide, through the Google web site." (Docket No. 6 at 4-5). The Second Claim makes similar allegations against defendant Medical Society, *e.g.*, that a representative of the Medical Society ordered Plaintiff to submit to a mandatory psychological evaluation based upon documents obtained through the Department of Obstetrics & Gynecology of defendant SUNY Buffalo; harassed plaintiff to force him to be subjected to a psychological evaluation; refused to make available to plaintiff a copy of the "charges and request" from SUNYBuffalo to enable plaintiff to respond; and transmitted confidential information concerning the psychological evaluation to defendant New York State Department of Health. (*Id.* at 5-6). The Third Claim likewise alleges that a representative of defendant SUNY Buffalo, in retaliation for an alleged whistle-blowing report by plaintiff with respect to officials of the Obstetrics and Gynecology Department, obtained, under duress, plaintiff's consent to a request for a psychological evaluation; conspired with the DOH/OPMC to mandate plaintiff's submission to a psychiatric examination; and used such examination to disparage plaintiff before other residency training programs and prospective employers. (*Id.* at 8). Plaintiff's statement of each claim concludes with the virtually identical assertion that defendant's actions have led to permanent injury to his reputation and resulting distress, loss of employment opportunities, and "tendency to bankruptcy." (*Id.* at p. 5 [First Claim, ¶ 3], p. 6 [Second Claim, ¶ 5] and p. 7 [Third Claim, ¶ 4). Interpreting plaintiff's allegations liberally, as the Court must with respect to the pleadings of *pro se* litigants, the only federal claim that they can be appropriately construed as stating against each defendant is the same "stigma plus"

defamation claims that he asserted against a number of physicians and other personnel affiliated with the SUNY at Buffalo Medical School in *Nwabue v. Allaf*, *supra*, and which have been dismissed by this Court on summary judgment. *See Nwabue v. Allaf*, 09-CV-1092, Docket No. 148 (July 26, 2012).

For each of his claims, plaintiff seeks compensatory and punitive damages, the retraction of offending documents and communications, "a notarized written apology to be circulated through the available media world-wide" and permanent injunctive relief.

Immunity

> "It is well-established that the Eleventh Amendment bars actions against states and state agencies. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). Eleventh Amendment immunity precludes a plaintiff from seeking any relief against states and state agencies—including monetary and injunctive relief. *Cory v. White*, 457 U.S. 85, 90-91 (1982). This immunity 'extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.' *Gollomp*, 568 F.3d at 366."

*Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 275 (N.D.N.Y. 2012) (some internal citations omitted); *see also Lee v. Saltzman,* 2011 U.S. Dist. LEXIS 135925, at *12 (W.D.N.Y. 2011) (Eleventh Amendment bars suit against state and state agencies, "whether relief sought is legal or equitable.") (internal quotation and citation omitted).

Each of the defendants named in the amended complaint is an agency of the State of New York. *See Harris v. N.Y. State Dep't of Health,* 202 F. Supp. 2d 143, 178 (S.D.N.Y. 2002) (dismissing, on Eleventh Amendment grounds, claims brought under § 1983 by a physician seeking to challenge the revocation of his medical license by the New York State Department of Health: "[Plaintiff's] claims name DOH as the sole defendant. Because

5

neither the State nor its agencies qualify as 'persons' under § 1983, they are not subject to suit under that statute".); *Wang v. Office of Professional Medical Conduct*, 228 Fed. Appx. 17, 2007 U.S. App. LEXIS 7351, at *19 (2d Cir. Mar. 28, 2007) (unpublished) (affirming district court's determination that physician's Section 1983 claims against the Office of Professional Medical Conduct are barred by the Eleventh Amendment.); *Dube v. StateUniversity of New York*, 900 F.2d 587, 594 (2d Cir. 1990), cert. denied sub. nom. *Wharton v. Dube*, 501 U.S. 1211 (1991) ("For Eleventh Amendment purposes, SUNY is an integral part of the government of the State [of New York] and when it is sued the State is the real party." ) (internal quotation omitted); *Rao v. Medical Soc'y*, 1998 U.S. Dist. LEXIS 18050, at *3, n. 4 (S.D.N.Y. Nov. 17, 1998) (noting that the Medical Society of the State of New York is an entity engaged in regulating the medical profession in New York, and performs functions both independently and by delegation from New York State governmental authorities).

Accordingly, given the Court's determination that the defendants named in his amended complaint are all immune from suit because they are agencies of the State of New York, the Court will dismiss the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii). Moreover, the Court finds that granting plaintiff leave to further amend would be futile, particularly in light of plaintiff's demonstrated penchant for filing frivolous pleadings and making what the Court has labeled "frivolous," "incoherent" "far-fetched" and "bizarre" legal arguments in the related cases he has filed in Western District, *see Nwabue v. Allaff*, Order dated 12/9/11 at ¶ 10 (Docket No. 99), Decision and Order dated 7/26/12 at ¶¶ 5, 7 (Docket No. 148); *Nwabue v. Dillon*, Order dated 12/10/12 (Docket No. 31),

6

which has led the Court to warn him of the prospect of sanctions under Rule 11 of the Federal Rules of Civil Procedure, *see Nwabue v. Allaff*, Order dated 9/4/12 (Docket No. 159).

## **CONCLUSION**

For the reasons discussed above, the amended complaint is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to] appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

## **ORDERS**

IT HEREBY IS ORDERED, that the amended complaint is dismissed in its entirety with prejudice;

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED

Dated: February 9, 2013
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court